No. 22-80029

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**META PLATFORMS, INC.,**

*Petitioner-Defendant*,

v.

**DZ RESERVE AND CAIN MAXWELL D/B/A MAX MARTIALIS,**

*Respondents-Plaintiffs*.

On Petition for Permission to Appeal from the United States District Court
for the Northern District of California, Case No. 3:18-cv-04978-JD
The Honorable James Donato

## REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL CLASS CERTIFICATION DECISION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

**REDACTED**

Elizabeth L. Deeley
Melanie M. Blunschi
Nicole C. Valco
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Samir Deger-Sen
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Andrew B. Clubok
Susan E. Engel
Margaret A. Upshaw
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
andrew.clubok@lw.com

*Counsel for Petitioner-Defendant Meta Platforms, Inc.*

## TABLE OF CONTENTS

                                                                                                              **Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.     THE DISTRICT COURT WRONGLY CERTIFIED A CLASS OF MILLIONS OF ADVERTISERS WHO ALL VIEWED DIFFERENT STATEMENTS ...........................................................................................3

II.    THE DISTRICT COURT'S DECISION IMPLICATES A FUNDAMENTAL AND UNSETTLED QUESTION OF CLASS ACTION LAW ....................................................................................................8

III.   FAILURE TO GRANT THE PETITION WOULD LIKELY BE THE DEATH KNELL OF THIS LITIGATION ....................................................10

IV.  META WAS NOT REQUIRED TO CHALLENGE EVERY ASPECT OF THE CLASS CERTIFICATION ORDER AS A PREREQUISITE FOR INTERLOCUTORY REVIEW ..........................................................11

CONCLUSION ...................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................... 7

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ................................................................. 1, 11

*dotStrategy, Co. v. Facebook, Inc.*,
   No. 20-00170, 2021 WL 2550391 (N.D. Cal. June 22, 2021) .................. 10

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................... 4

*In re Facebook, Inc., PPC Advert. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v.
   Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) .................................... 10

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .................................................................. 4, 7

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   No. 18-CV-05286, 2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ....... 6, 8, 9, 10

*Kohen v. Pac. Inv. Mgmt. Co.*,
   571 F.3d 672 (7th Cir. 2009) .................................................................... 11

*Moser v. Benefytt, Inc.*,
   8 F.4th 872 (9th Cir. 2021) ....................................................................... 12

*O'Connor v. Uber Techs., Inc.*,
   No. 15-80220, Dkt. 9 (9th Cir. Apr. 5, 2016) ............................................. 1

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   No. 19-56514, Dkt. 1 (9th Cir. Dec. 20, 2019) .......................................... 1

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ................................................................ 12

*Risinger v. SOC LLC*,
    No. 15-80180, Dkt. 15 (9th Cir. Jan. 27, 2016) ..................................................... 1

*Rodney v. Nw. Airlines, Inc.*,
    146 F. App'x 783 (6th Cir. 2005) ...................................................................... 11

*Singh v. Google LLC*,
    No. 16-cv-03734, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ............... 6, 8, 9, 10

*TopDevz, LLC v. LinkedIn Corp.*,
    No. 20-CV-08324, 2021 WL 6113003 (N.D. Cal. Dec. 27, 2021) .................... 10

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) ............................................................................. 6

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ....................................................................... 1, 7, 8

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ............................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 7

*Woods v. Google, Inc.*,
    No. 5:11-cv-01263, Dkt. 444 (N.D. Cal. Nov. 30, 2018) ................................. 10

## Other Authorities

16 Wright & Miller, *Federal Practice and Procedure* § 3931.1 (3d ed.
    Apr. 2021 Update) ............................................................................................ 12

iv

## INTRODUCTION

Plaintiffs do all they can to distract from the extraordinary and unprecedented nature of the district court's class certification order—including mischaracterizing the underlying facts and the order itself. But, ultimately, Plaintiffs do not deny that this case involves one of the largest certified fraud classes in the history of this circuit, or that the petition presents important and recurring issues on which district courts lack guidance. And, superficial differences aside, Plaintiffs have no serious response to the conflict the decision below creates with other district courts within this circuit. These features alone make this case worthy of interlocutory review. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir. 2005) (review of "unsettled legal questions" warranted to ensure "the orderly development of law" (citation omitted)).

Tellingly, Plaintiffs are unable to cite *any* case where a court has certified a class remotely like this one. The closest case they can find is a Second Circuit opinion (*Foodservice*) involving a class of 75,000 individuals, each of whom was subject to the same systematic over-billing scheme. That decision is a far cry from the over-three-million-advertiser class here, where each advertiser was exposed to different representations based on their own unique targeting criteria. Plaintiffs' absence of authority only underscores that there has never been a class *anywhere* of

1

this size and scope that has been certified based on concededly varying alleged misstatements. That makes this an extraordinary case, by any measure.

Unable to deny the case's importance, Plaintiffs' strategy for evading review rests on defending the district court's decision on the merits—but they do so on grounds the district court would scarcely recognize. Plaintiffs repeatedly assert that Meta "admits in documents Potential Reach is REDACTED ." *See, e.g.*, Opp. 1. But that statement is categorically false. That supposed "admission" comes from a single document discussing an entirely different metric that is not at issue in this case—and that the district court *did not even cite*. Plaintiffs also repeatedly invoke the supposed "finding" by their expert, Dr. Cowan, that Potential Reach "is always inflated by at least 10%," *id.* at 5, but, again, the district court did not cite that purported finding in either its falsity or materiality holdings. Plaintiffs' defense of the district court's decision on grounds the district court never adopted only serves to highlight how indefensible the decision is on its own terms.

This Court should not be swayed by Plaintiffs' efforts to conjure up confusion. The decision below twists Rule 23(b)(3)'s predominance requirement beyond recognition and provides a roadmap for class certification in multi-billion-dollar class actions across this circuit. This Court's intervention is needed.

# ARGUMENT

I. **THE DISTRICT COURT WRONGLY CERTIFIED A CLASS OF MILLIONS OF ADVERTISERS WHO ALL VIEWED DIFFERENT STATEMENTS**

The district court's certification decision is premised on the contention that it is *irrelevant* that the millions of advertisers in this class saw different Potential Reach estimates, and that the variance in alleged inflation to which class members were exposed ranges from *de minimis* to over 50%. Pet. 15. In a few conclusory paragraphs, the court disregarded this fundamental problem by finding (1) falsity could be proven on a class-wide basis, simply because "the discrepancy between people and accounts made the number inaccurate, even if the numerical value of the inaccuracy varied across advertisers"; and (2) "materiality and reliance" could also be proven on a class-wide basis, because "Potential Reach metrics were shown to all advertisers in the Ads Manager," "Meta [] acknowledged that Potential Reach is an important number for advertisers," and "[a] majority of advertisers rely on Potential Reach as a metric for their advertisements." Order 10-11, ECF No. 388. That was the beginning and end of the court's reasoning. That superficial analysis fails to engage with the fact that whether an "estimate" is false or misleading depends on the *degree* to which it departs from the true value.

Tellingly, Plaintiffs do not even try to defend the district court's *actual* reasoning, instead pivoting to grounds the court did not rely on.

3

*First*, Plaintiffs rely on supposed "documents" where Meta "admit[s]" that Potential Reach " REDACTED " Opp. 1, 4. But the only document that Plaintiffs cite to support this claim is an email by Meta's VP of Analytics that did not discuss Potential Reach at all, but rather a *different* metric, which Plaintiffs have never challenged and which is not at issue in this case. *See* Class Cert. Mot. Ex. 33, ECF No. 356-20.[1] Plaintiffs reference this document on the first page of their opposition, and cite it no less than three times—but the district court did not cite it *at all*. In fact, in their zeal to bolster the certification decision, Plaintiffs cite over a dozen documents the district court did not even mention. Plaintiffs cannot supply a new factual basis for the court's order simply by littering their opposition with misleading references to "documents" containing "admissions" that constitute an "avalanche of evidence." Opp. 1, 4. Needless to say, it is the *district court*, not plaintiffs, that must "resolve any factual disputes necessary" to determining the class-certification question. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

*Second*, Plaintiffs repeatedly rely on testimony by their expert, Dr. Cowan, that each Potential Reach estimate was inflated by a minimum of 10%. Opp. 5, 14. Cowan's analysis was at least cited by the district court—but not for the proposition

---

[1] The email's stray reference was also demonstrably inaccurate, as the author himself explained in later deposition testimony.

4

for which Plaintiffs seek to use it here. The court did *not* discuss Cowan in the falsity and materiality portions of its opinion, but rather only when addressing the injury element. Order 11. And, even there, the court acknowledged that Meta's expert, Dr. Tadelis, had challenged that finding based on its "flawed assumption[s]," yet the court declined to resolve that expert dispute, because "Dr. Tadelis d[id] not conclude that no inflation occurred *at all*." *Id.* In other words, the court found Plaintiffs could establish class-wide liability simply because there was *some* inflation in each estimate, not—as Plaintiffs try to recast on appeal—because the court accepted some finding of 10% minimum inflation. Plaintiffs' argument thus provides no serious defense of the district court's flawed reasoning.[2]

Beyond these efforts at misdirection, Plaintiffs have remarkably little to say. Plaintiffs dismiss (at 16-17) the fact that advertisers viewed each representation in the context of different objectives, information, and experience—factors other courts have squarely found *preclude* certification—because materiality is an "objective" inquiry. But, while objective, that inquiry is trained on what a reasonable person in

---

[2] Plaintiffs also try to muddy the waters by claiming the district court accepted "two theories of liability," one of which was that the use of the word "people" alone was a false statement. Opp. 1, 8. But that assertion finds no footing in the court's opinion, which makes clear that the word "people" is only misleading to the extent the number of people differs from the number of accounts, causing the *number* that advertisers see to be "inaccurate" (even though that number changes from class-member to class-member). Order 10-11.

the *plaintiff's position* would find material. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 133-34 (2009) ("patient-specific factors" rendered materiality individualized); *IntegrityMessageBoards.com v. Facebook, Inc. ("IMB")*, No. 18-CV-05286, 2021 WL 3771785, at *17 (N.D. Cal. Aug. 24, 2021) (presumption of reliance inapplicable where advertisers had different "prior knowledge, experience, and expectations" that precluded class-wide proof of materiality).

This class is nothing like a group of household consumers viewing a label at a supermarket—it ranges from sole proprietors of tiny online businesses to Fortune 500 behemoths, like United Airlines, to government entities. As other courts have recognized, it makes no sense to assume such advertisers would respond to a representation in a common way—especially when they were privy to different metrics and had different goals (including goals that had nothing to do with "reach"). *See IMB*, 2021 WL 3771785, at *16-17 (advertisers with "different objectives" would not "attach materially similar significance" to representations); *Singh v. Google LLC*, No. 16-cv-03734, 2022 WL 94985, at *12 (N.D. Cal. Jan. 10, 2022) (advertisers with marketing experience would not all "attach importance" to advertising metric).

Moreover, Plaintiffs do not dispute these diverse advertisers received *different* accompanying information and disclosures over the course of the Class Period, further multiplying the divergences among the class. *See* Pet. 16-17; *Tucker v. Pac.*

6

*Bell Mobile Servs.*, 208 Cal. App. 4th 201, 224-25, 227 (2012) (materiality "would vary from consumer to consumer" where some class members viewed disclosures that changed their understanding of alleged misrepresentations).

Plaintiffs rely on only two cases in the entirety of their opposition to support the district court's predominance holding (neither of which the district court cited itself)—and both just underscore the extraordinary and unprecedented nature of the certification here. Plaintiffs first rely on a pre-*Wal-Mart* case from this Court for the sweeping proposition that certification is appropriate whenever there is a "centrally-orchestrated" "'common course of conduct.'" Opp. 12 (citing *In re First All. Mortg. Co.*, 471 F.3d 977, 990-92 (9th Cir. 2006)). But the notion that a "common course of conduct" alone warrants certification, regardless of individualized differences between class members, is plainly out of step with more recent Supreme Court precedent. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). And, in any event, *First Alliance* involved a "standardized sales pitch," *id.* at 991, and discussed only Rule 23(a)'s commonality requirement, without even citing Rule 23(b)(3)'s "far more demanding" predominance standard. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

Plaintiffs' only other authority is a Second Circuit case involving a class of 75,000 who were subject to a RICO mail-fraud scheme in which the defendant used shell companies to inflate its alleged costs and over-bill customers. *In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 112-13, 117 (2d Cir. 2013). That case did not involve the "[]accuracy" of any "estimate," Order 10, but rather a systematic, across-the-board scheme to over-charge "each class member *in the exact same manner.*" *Foodservice*, 729 F.3d at 119. Indeed, that case features none of the variance between class members present in this over-three-million-advertiser class. It is therefore no surprise that the district court did not cite *Foodservice*. And the fact that *Foodservice* is the best case Plaintiffs can muster from any court (in any circuit) simply highlights how far afield the district court's decision here truly is.

## II. THE DISTRICT COURT'S DECISION IMPLICATES A FUNDAMENTAL AND UNSETTLED QUESTION OF CLASS ACTION LAW

Interlocutory review is also warranted because the issues presented in this petition are recurring and unsettled in the district courts. In particular, the district court's decision creates a conflict in authority with the decisions in *IMB* and *Singh*.

In *IMB*, the district court declined to certify a virtually identical class of Meta advertisers because, just as here, (1) each advertiser was exposed to different statements based on the particular criteria they viewed in Meta's Ads Manager, and the court would need to "identify which advertisers viewed which [statements]"; and (2) advertisers varied in their objectives and "prior knowledge, experience, and expectations," such that, even if they saw the same representation, it was unclear they would attach "materially similar significance" to it. 2021 WL 3771785, at *11-

8

14, *17. Both of those holdings directly conflict with the district court's decision here.

Plaintiffs do not even *address* either of those holdings in *IMB*, but instead dismiss the case in a cursory paragraph because the *IMB* court *also* identified certain other "individualized issues not present here," such as typicality and "fail[ure] to proffer a classwide damages model." Opp. 21-22. As an initial matter, many of those grounds *are* present here, as Meta argued in its petition and below. *See* Pet. 21; Class Cert. Opp. 15-17, 24, ECF No. 294. But, regardless, the fact that the *IMB* court may have had additional reasons to deny certification does nothing to minimize the clear conflict on the two issues discussed above—a conflict that Plaintiffs conspicuously do not deny.

Similarly, in *Singh*, the court found predominance lacking where determining whether Google's advertising metric was a misrepresentation would require a comparison between "the experience of each advertiser to the average rate claimed by Google," and advertisers had "varying levels of advertising sophistication" that impacted whether Google's statements would be misleading. 2022 WL 94985, at *5, *8, *12. Plaintiffs again point to various alternative grounds for dismissal. Opp. 22. But that misses the key point: *Singh* squarely holds that the *exact* kinds of differences between advertisers that are present here *do* preclude certification.

9

Plaintiffs are free to argue that *Singh* was wrongly decided, but the conflict is undeniable and warrants this Court's review.

More broadly, Plaintiffs do not seriously dispute that cases involving online advertisers exposed to varying representations are frequently recurring and enormously important. *See generally IMB*, 2021 WL 3771785; *Singh*, 2022 WL 94985; *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014); *dotStrategy, Co. v. Facebook, Inc.*, No. 20-00170, 2021 WL 2550391 (N.D. Cal. June 22, 2021); *Woods v. Google, Inc.*, No. 5:11-cv-01263, Dkt. 444 (N.D. Cal. Nov. 30, 2018); *cf. TopDevz, LLC v. LinkedIn Corp.*, No. 20-CV-08324, 2021 WL 6113003 (N.D. Cal. Dec. 27, 2021). Nor can they deny that district courts have struggled to establish uniform standards governing whether, and in what circumstances, cases like this are amenable to class-wide treatment. There is no reason for this Court to let that uncertainty persist in this area of unquestionable significance to the development of class action law.

### III. FAILURE TO GRANT THE PETITION WOULD LIKELY BE THE DEATH KNELL OF THIS LITIGATION

Plaintiffs also assert that the order will not be the death knell of this litigation, because Meta is "one of the largest companies in the world" and certification would not be "terminal" to its business. Opp. 23. But the death-knell factor does not require a defendant to show imminent bankruptcy, just that the "damages claimed"

10

would force it "to settle without relation to the merits of the class's claims." *Chamberlan*, 402 F.3d at 960 (citation omitted); *see also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 678 (7th Cir. 2009) (granting Rule 23(f) petition, even though "suit d[id] not jeopardize . . . existence" of firm). Plaintiffs compare this case to *Chamberlan*, Opp. 23, but the claimed damages here are over *70 times* those in *Chamberlan*. *See* 402 F.3d at 960. Indeed, Meta is unaware of any recent case outside of the personal-injury context where such an extraordinary figure has been taken to a federal jury. The practical reality, as Plaintiffs well know, is that this is the last opportunity for this Court to review the district court's certification order. If *any* case (short of bankruptcy) meets the death-knell standard, this is surely it.

## IV. META WAS NOT REQUIRED TO CHALLENGE EVERY ASPECT OF THE CLASS CERTIFICATION ORDER AS A PREREQUISITE FOR INTERLOCUTORY REVIEW

Finally, Plaintiffs assert that the petition should be denied because it focuses on the district court's misapplication of Rule 23(b)(3)'s predominance requirement, without *also* challenging certification of the Rule 23(b)(2) injunctive-relief class. But Plaintiffs cite no authority to support the notion that a petition for interlocutory review should be denied simply because it does not challenge each and every aspect of a district court's decision. That is not the law. *See, e.g.*, *Rodney v. Nw. Airlines, Inc.*, 146 F. App'x 783, 784-85 (6th Cir. 2005) (granting 23(f) petition where plaintiff appealed denial of certification of damages class, but not denial of

11

injunctive-relief class); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000) (noting that injunctive-relief classes "create less pressure" to settle than damages classes).

In any event, if the petition is granted, the entire certification order comes before this Court, and Meta may challenge (and this Court may review) any aspect of the decision below. *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 875-76 (9th Cir. 2021) (explaining that under Rule 23(f), it is the "*order*" that is appealable); 16 Wright & Miller, *Federal Practice and Procedure* § 3931.1 (3d ed. Apr. 2021 Update). But, at the petition stage, Meta properly limited its briefing to the district court's most egregious errors, and those issues which have divided courts within this circuit. To impose some additional requirement that all grounds underpinning a certification order must be challenged would simply encourage unfocused, catch-all petitions that impede this Court's ability to select appropriate candidates for review.

## CONCLUSION

The petition should be granted.

Dated: April 29, 2022                Respectfully submitted,

|  |  |
|---|---|
|  | /s/ Andrew B. Clubok |
| Elizabeth L. Deeley | Andrew B. Clubok |
| Melanie M. Blunschi | Susan E. Engel |
| LATHAM & WATKINS LLP | Margaret A. Upshaw |
| 505 Montgomery Street, Suite 2000 | LATHAM & WATKINS LLP |
| San Francisco, CA 94111 | 555 Eleventh Street, NW, Suite 1000 |
| (415) 391-0600 | Washington, DC 20004 |
|  | (202) 637-2200 |
|  | andrew.clubok@lw.com |
| Samir Deger-Sen |  |
| LATHAM & WATKINS LLP |  |
| 1271 Avenue of the Americas |  |
| New York, NY 10020 |  |
| (212) 906-1200 |  |

*Counsel for Petitioner-Defendant Meta Platforms, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this Reply in Support of Petition For Permission To Appeal Class Certification Decision Pursuant to Federal Rule of Civil Procedure 23(f) complies with the type-volume limitation of Circuit Rules 27-1(1)(d) and 32-3(2), because the document contains 2,788 words, excluding portions exempted under Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f).

*/s/ Andrew B. Clubok*
Andrew B. Clubok